UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No.: 3:18-CR-00136 |
| | ) | REEVES/POPLIN |
| BRADLEY PAYTON HEFNER | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant moves to amend or revoke the Magistrate Judge's Order of Detention, entered on December 21, 2018 [*see* D. 31]. For the reasons given, Defendant's motion [D. 33] is denied.

### I. BACKGROUND

Defendant, Bradley Payton Hefner, is charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) [D. 3]. He came before Magistrate Judge Debra Poplin for his initial appearance and arraignment on September 20, 2018 [D. 7]. At that time, he waived his detention hearing (while reserving his right to have a hearing at a later date), and Judge Poplin ordered Defendant detained [D. 10, 11].

On December 12, Defendant filed a motion for pre-trial release, and Judge Poplin held a hearing in light of that motion on December 19 [D. 19]. Based on the evidence presented at the hearing and the information contained in the pretrial services report, Judge Poplin ordered Defendant detained pending trial [D. 31]. On January 4, 2019, Defendant moved the district court to amend or revoke the detention order, under 18 U.S.C. § 3145(b) [D. 33].

1

The Government did not initially file a response, and the Court subsequently ordered it to file a brief in response to ensure a complete record [D. 38]. In compliance with that order, the Government filed its response on February 5 [D. 39], and the matter is now ripe for decision.

## II. APPLICABLE LAW

### a. Standard of Review & Burden of Proof

On a defendant's motion, the district court reviews a magistrate judge's detention order under a de novo standard. 18 U.S.C. § 3145(b); *U.S. v. Marcrum*, 853 F. Supp. 2d 877, 880 (W.D. Tenn. 2013) (the district court "must engage in the same analysis, with the same options...as the magistrate judge" (citing *U.S. v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *4 (E.D. Tenn. Mar. 25, 2011)).

A defendant should be detained without bond pending trial, only if the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "Pretrial detention can be ordered based on a judicial finding of either substantial danger to the community or risk of flight; only one is required." *Marcrum*, 953 F. Supp. 2d at 881 (quoting *U.S. v. Hernandez*, No. 1:02-CR-6, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002)). The finding that defendant is a flight risk must only be supported by the preponderance of the evidence, while a finding of danger to the community must be supported by clear and convincing evidence; in either case, the Government shoulders the burden of proof. *Id.* § 3142(f).

*b. Presumption Against Release*

In certain cases, the Court applies a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any person and the community. Judge Poplin applied such a presumption in this case, under 18 U.S.C. § 3142(e)(2)[1].

A two-step analysis is used to determine whether the § 3142(e)(2) presumption applies. First, the defendant must be charged with a crime enumerated in 18 U.S.C. § 3142(f)(1). Second, the Court must find that: i) the defendant has previously been convicted of a federal offense—or its state-law equivalent—listed in § 3142(f)(1); ii) the prior (f)(1) offense occurred while the person was on release pending trial for any federal, state, or local offense; and iii) no more than five years have elapsed since the date of conviction, or the release of the defendant from prison, for the prior (f)(1) offense. *Id.* § 3142(e)(2)(A)-(C).

In plain English, because the defendant recently committed a serious crime (as defined by Congress) while they were on pre-trial release, the Court will not give the defendant the benefit of the doubt a second time. Instead, it will presume that no release condition, or set of conditions, will assure the safety of any other person or the community. If the defendant cannot introduce evidence to rebut that presumption, they should be detained. Section 3142(e)(2) draws on a commonsense idea: Fool me once, shame on you; fool me twice, shame on me. By applying this presumption, the Court can avoid bringing shame upon itself.

The presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the Government. *U.S. v. Stone*, 608 F.3d 939, 945 (6th Cir. 2001). The burden

---

[1] This presumption is distinct from the one applied in § 3142(e)(3), which creates a rebuttable presumption regarding both that no condition or set of conditions will assure the safety of other people and the community, *and* "that no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e)(3). The (e)(2) presumption only applies to the former consideration.

of production is "not heavy," and the defendant satisfies the burden simply by introducing "some evidence" in rebuttal. *Id.* (quoting *U.S. v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991)).

   c. *§ 3142(g) factors*

If the presumption does not apply, or if the defendant successfully rebuts the presumption, then the court should determine whether there are conditions of release that will reasonably assure the defendant's appearance in court, the safety of any other person, and the community. 18 U.S.C. § 3142(g). The court must take into account i) the nature and circumstances of the offense charged, ii) the weight of evidence against the defendant, iii) the history and characteristics of the defendant, and iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.* § 3142(g)(1)-(4).

**III.   DISCUSSION**

   a. *Application of § 3142(e)(2) Presumption*

Judge Poplin applied the "fool me once" presumption in this case[2] [D. 31], but because the standard of review is de novo, the Court must decide for itself whether a presumption should apply under 18 U.S.C. § 3142(e)(2).

Step one in this case is easy—Defendant's current federal charge must be a crime enumerated in § 3142(f)(1). The list of enumerated charges includes those "that involve[] the use of a firearm or destructive device," defined in 18 U.S.C. § 921. *Id.* § 3142(f)(1)(E). Defendant is charged with knowingly possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) [D. 3]. Thus, the first requirement is met.

---

[2] Defendant conceded the presumption before Judge Poplin [*see* D. 27, ¶ 7]. Judge Poplin noted the parties consent in the Order of Detention, but found its applicability was not "abundantly clear" in this case [D. 31-1, p. 2].

4

In step two, the Court examines the defendant's prior convictions. According to the Pretrial Services Report, Defendant pled guilty to two counts of burglary on October 29, 2009, in Minnehaha County, South Dakota [PSR, p. 5]. For the first count, he was sentenced to eight years of incarceration. On the second, he received five years, three months, and twenty-one days.

He was charged on four other counts stemming from the same arrest. The disposition of two counts—for first-degree kidnapping and aggravated assault with a weapon—is unknown [*Id.*]. The other two counts—for marijuana possession and committing a felony while carrying a firearm—were dismissed [*Id.*].

    i.     <u>§ 3142(e)(2)(A)</u>

First, the Court must find the South Dakota conviction was "a Federal offense that is described in [subsection (f)(1)], or of a State or local offense that would have been an offense described in subsection (f)(1)...if a circumstance giving rise to Federal jurisdiction had existed." *Id.* § 3142(e)(2)(A). Subsection (f)(1) categorizes five types of crimes. On its face, the South Dakota conviction may fit into two of those categories, while the other three are clearly inapplicable.[3]

The first candidate is a "crime of violence...for which a maximum term of imprisonment of 10 years or more is prescribed." *Id.* § 3142(f)(1)(A). A "prescribed" sentence of ten years or more does not necessarily mean the defendant was sentenced to that time, it simply means that such a sentence was possible. *See U.S. v. Jones*, 804 F. Supp. 108, 1088 (S.D. Ind. 1992) (citing *U.S. v. Chimurenga*, 760 F.2d 400, 403-04 (2d. Cir. 1985) (interpreting identical language in 18 U.S.C. § 3142(e)(3)(A) to mean that defendant was merely "subject to" 10 years imprisonment).

---

[3] These are crimes where the maximum sentence is life imprisonment or death; for which a maximum term of imprisonment of ten years or more is prescribed in the federal Controlled Substances Act; and any felony if the person has been convicted of two or more offenses described in subparagraphs (A)-(C). 18 U.S.C. § 3142(f)(1)(B)-(D).

The other category of crime that may apply here would be "any felony that is not otherwise a crime of violence...that involves the possession or use of a firearm." 18 U.S.C. § 3142(f)(1)(E).

If burglary in South Dakota is a "crime of violence," for which a sentence of ten years or more may be prescribed, then Defendant's prior crime falls within the class of conduct described in subsection (f)(1)(A). If burglary in South Dakota is not a "crime of violence," but if the felony "involved the possession or use of a firearm," then Defendant's prior crime falls within the class of conduct described in subsection (f)(1)(E).

The Court will address the latter case first. For the (e)(2) presumption to apply at all, the defendant must have been *convicted* of a crime described in subsection (f)(1). Here, Defendant was only convicted of burglary, while the firearm charge was dismissed and the outcome of the aggravated assault with a weapon charge is unknown [PSR, p. 5]. Unless there was a specific factual finding that a firearm was involved in the commission of the burglary (which does not appear in the record), Defendant's crime does not fall within the ambit of subsection (f)(1)(E), at least as applied to § 3142(e)(2)(A).

The Court must now consider whether the South Dakota conviction is considered a "crime of violence...for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(A).

Courts generally consider a burglary to be a "crime of violence" within the meaning of subsection (f)(1)(A). *See U.S. v. Bishop*, 350 F. Supp. 2d 127, 130-32 (D.Me. 2004) (drawing analogy to definitions used for Career Offender status under Sentencing Guidelines and "violent felony" within meaning of Armed Career Criminal Act); *Vargas-Sarmiento v. Dep't of Justice*, 448 F.3d 159, 173 n. 9 (2d. Cir. 2006) (legislative history shows that definition for "crime of violence" in (f)(1)(A) essentially adopts the provisions of the District of Columbia code, which

defines burglary as crime of violence); *accord U.S. v. Stitt*, No. 17-765, slip op. at 6 (S.Ct. Dec. 10, 2018) ("Congress...viewed burglary as an inherently dangerous crime because burglary 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.'") (quoting *Taylor v. U.S.*, 495 U.S. 575, 588 (1990)).

The Pretrial Services Report does not say what maximum sentence was prescribed for Defendant's burglary convictions. South Dakota law criminalizes three degrees of burglary, corresponding to a different class of felony. *See* S.D. CODIFIED LAWS § 22-32-1 (First degree burglary—Class 2 felony); *Id.* § 22-32-3 (Second degree burglary—Class 3 felony). Defendant was convicted in 2009; in 2013, the legislature reduced third degree burglary from a Class 4 to a Class 5 felony. 2013 S.D. Sess. Laws ch. 101 § 62; S.D. CODIFIED LAWS § 22-32-8 (2018) (Third degree burglary—Class 5 felony). A Class 5 felony provides for a maximum of five years imprisonment, a maximum of ten years for Class 4, a maximum of fifteen for Class 3, and a maximum of twenty-five for Class 2. S.D. CODIFIED LAWS § 22-6-1.

Thus, the least punitive conviction Defendant could have received was for third degree burglary, a Class 4 felony in 2009, which carried a maximum sentence of ten years. Because his conviction necessarily prescribed a maximum sentence of ten years or more, and because it was for burglary—a "crime of violence," as the term is understood in § 3142(f)(1)(A)—the Court finds the requirement of § 3142(e)(2)(A) has been satisfied.

    ii.    <u>§ 3142(e)(2)(B)</u>

Under this subsection, the offense described in subsection (e)(2)(A) (in this case, the South Dakota burglary conviction), must have been committed while the person was on release pending trial for a federal, state, or local offense. 18 U.S.C. § 3142 (e)(2)(B).

The Pretrial Services Report discloses that Defendant was arrested for the burglaries (and the other charges discussed) on September 10, 2008. [PSR, p. 5]. He had previously been arrested on August 26, 2008, for driving under suspension, and was convicted of that offense on September 19, 2008. [*Id.*, p. 4]. Because September 10 falls between August 26 and September 19, one might assume Defendant committed the burglary while on release for the suspended license charge.

The Court discussed this matter with the probation officer who prepared the Pretrial Services Report. She advised that defendants with driving on suspended charges are sometimes arrested, and sometimes cited for the offense. If the latter, Defendant technically would not have committed the burglary on pretrial release, and the condition of subsection (e)(2)(B) would not be satisfied. The Pretrial Services Report does not provide sufficient detail to answer whether Defendant was arrested or simply cited in this instance, and therefore the Court cannot conclude the requirement of subsection (e)(2)(B) has been met.

### iii. § 3142(e)(2)(C)

Finally, the Court may only apply the presumption if a period of no more than five years has elapsed between either the date of the conviction, or the defendant's release from imprisonment, whichever is later. 18 U.S.C. § 3142(e)(2)(C).

Defendant was initially paroled on June 15, 2011 [PSR, p. 5]. On November 3 of that year, his parole was revoked for absconding and failing to report [*Id.*]. He then served time in prison until April 13, 2015, when his parole was reinstated (i.e., he was released from prison) [*Id.*]. Therefore, because Defendant has been released in the last five years, subsection (e)(2)(C) is satisfied.

### iv. § 3142(e)(2) Presumption Does Not Apply

To apply a presumption that no set of release conditions will reasonably assure the safety of any other person and the community, the Court must find all of the discussed requirements have

8

been met. In this case, the Court finds that Defendant's charge falls within the category of cases where the presumption may apply. 18 U.S.C. § 3142(e)(2); *Id.* § 3142(f)(1)(E). The Court also finds the conditions of subsection (e)(2)(A) (requiring prior conviction for crime under subsection (f)(1)) and (e)(2)(C) (requiring less than five years between date of conviction or release from prison and the present charge) have been satisfied. However, the Court cannot establish that the prior crime was committed while Defendant was on release pending trial for another federal, state, or local offense, and it must do so to apply the presumption. *Id.* § 3142(e)(2)(B). Therefore, the Court will not hold a presumption against Defendant that no set of circumstances can reasonably assure the safety of any other person and the community.

Because no presumption applies, the Court must now determine whether any release conditions can assure the safety of the community and others, as well as Defendant's appearance in Court, using the factors provided in 18 U.S.C. § 3142(g)

   b.  *3142(g) factors*

In considering the § 3142(g) factors, the Court may consider both actual convictions and arrests or indictments, although the Court places less weight on the latter. *U.S. v. Tolbert*, No. 3:09-CR-56; 3:10-CR-30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (collecting cases).

   i.  Nature and circumstances of the offense charged

The Court must first account for "the nature and circumstances of the offense charged, including whether the offense...involves a firearm." 18 U.S.C. § 3142(g)(1). The specific inclusion of firearm offenses in the statute suggests Congress considered such offenses particularly dangerous. *See Stone*, 608 F.3d at 947.

As mentioned, Defendant is charged with possession of a firearm. In addition, he currently faces state court charges for a prior incident of aggravated assault and being a felon in possession

9

of a firearm [D. 39-1, p. 5; PSR, p. 6]. As part of the order granting bail in that case, Defendant was prohibited from using or possessing a firearm or other weapon [D. 39-1, p. 1]. Judge Poplin relied on this order in part when she applied subsection (g)(1) [D. 31-1].

Defendant says this protective order was no longer valid, because the underlying case was dismissed [D. 33, p. 3]. Since the order was allegedly not in force, he argues his conduct in this case was not as problematic as Judge Poplin believed it to be. The issue needs some explaining.

In the Order of Detention, Judge Poplin referred to "an active Order from Sevier County General Sessions Court, prohibiting [Defendant] from possessing a firearm at the time of the instant offense" [D. 31-1]. The order—styled as an "Order Granting Bail for Domestic Abuse"—stems from a warrant issued on November 21, 2016; the order was entered on November 23, 2016, and validated (i.e., renewed) on August 6, 2017 and August 22, 2018 [*Id.*; *see* D. 39-1, p. 2]. (For the sake of clarity, the Court will call this the "Sevier County bail order.")

The case was bound over to a grand jury on charges of aggravated assault and possession of a weapon by a convicted felon [D. 39-1, p. 5]. Defendant was indicted, and a criminal court docket was created on February 27, 2017 [D. 39-3]. That case is still pending, and is reflected in the Pretrial Services Report as Case No. 22577 [*Id.*; PSR, p. 6].

Defendant says the "Domestic Abuse" charge in Sevier County was dismissed, and that "by definition" the protective order (meaning the Sevier County bail order) that issued was also no longer valid [D. 33, p. 3]. Continuing, he argues that the order referenced as being renewed on August 22, 2018 actually refers to a different case in Knox County [*Id.*]. Defendant has made three errors or misstatements.

First, the underlying charges in the Sevier County bail order are not strictly "Domestic Abuse" charges—they are for aggravated assault and possession of a firearm [D. 39-1]. According

10

to the Pretrial Services Report, there is a charge for "Domestic Assault" (in Knox, not Sevier, County) that has been dismissed for failure to prosecute [PSR, p. 6]. But Judge Poplin's order makes no reference to that charge. If Defendant was referring to the aggravated assault charge in Sevier County as a "Domestic Abuse" charge, he incorrectly asserts those charges were dismissed.

Second, a separate petition for a Temporary Protective Order was filed in Sevier County on March 15, 2017, by the same person who is protected under the terms of the Sevier County bail order [D. 39-2]. It is true the petition was dismissed after the petitioner failed to appear at a hearing scheduled for April 7, 2017 [*Id.*]. But the "Temporary Protection Order" mentioned in the Pretrial Services Report refers to the Sevier County bail order.[4] The victim's failure to appear at the hearing on the separate petition has no effect on the Sevier County bail order, which, as mentioned, was renewed on August 22, 2018.

This segues nicely to the third flaw in the argument. Defendant says the order referenced by Judge Poplin actually refers to a different protective order in Knox County, "issued on August 22," and mentioned in the Pretrial Services Report [D. 33, p. 3; PSR, p. 1 (No. 137417)]. In fact, the order was issued on August 23, 2018 but it expires on August 22, 2019, and protects a different person, for what is apparently a completely unrelated incident. (In other words, two separate people are currently protected from Defendant through some type of court order.)

In sum, Defendant has sent the Court on a fishing expedition for three red herrings: The Knox County Domestic Assault charge, dismissed on January 12, 2017 [PSR, p. 6]; the Sevier County petition for a Temporary Protective Order, dismissed on April 7, 2017 [D. 39-2]; and the other active Knox County Protection Order [PSR, p. 1]. None of these disprove what is clear from

---

[4] These can be cross-referenced by the assigned number, 1703131055 [*see* PSR, p. 2; D. 39-1, p. 2]

the record: When Defendant engaged in the conduct for which he was charged, he was subject to a live order—the Sevier County bail order [D. 39-1]—not to use or possess a firearm.

Defendant was charged for possessing a firearm in this case, while he was subject to a court order prohibiting him from using or possessing a firearm. Now, Defendant asks the Court to believe that, if released, he will not violate the conditions of his release and threaten public safety. The Court is skeptical, and finds the charge, by its nature, does not indicate Defendant can be released on conditions that would assure the safety of the community.

  ii. <u>The weight of evidence against the person</u>

Next, the Court must consider the weight of evidence against Defendant. 18 U.S.C. § 3142(g)(2). The Court's inquiry at this stage is circumscribed, and it only considers evidence of the defendant's dangerousness—the defendant's guilt is not at issue.[5] *Stone*, 608 F.3d at 948 (citing *U.S. v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

In his attempt to undermine Judge Poplin's reliance on the Sevier County bail order, Defendant has only highlighted the evidence of his dangerousness. That order in particular is specifically designed to protect victims of domestic abuse. *Hopkins v. Bradley Cty.*, 338 S.W. 2d 529, 536-37 (Tenn. 2010) ("It is clear...that it was the intent of the General Assembly to protect the victims of domestic abuse from additional abuse when the offender is taken into custody"). To issue the order, a magistrate must find, on the record, that the defendant is a threat to the alleged victim prior to imposing conditions on release. *See* TENN. CODE ANN. § 40-11-150.

The other orders also show evidence of harassment and abuse. As Defendant himself notes, he is the subject of *another* active protection order in Knox County, where the victim states that

---

[5] Defendant has also filed a motion to dismiss the indictment [D. 30], and asks the Court to apply the "presumption of innocence." That presumption, while important in establishing guilt at trial, is irrelevant here. *U.S. v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) ("[Subsection (g)(2)] is not relevant to whether probable cause has been established").

he has continuously harassed her, and has tried to break into the victim's boyfriend's apartment while she is there [PSR, p. 1]. Separately, in the petition for a temporary protective order, the same victim identified in the Sevier County bail order[6] alleges physical abuse and stalking over at least a seven month period [D. 39-2, p. 3]. And as Judge Poplin found, Defendant has a history of violent tendencies toward his mother, who is his proposed third-party custodian [D. 31-1, p. 1].

The Court must assure the safety of *any other person*, in addition to the community at large. 18 U.S.C. § 3142(g) (emphasis added). At this time, Defendant is the subject of two active orders prohibiting contact with another person in East Tennessee, and has already shown disregard for the imposed conditions in the instant case (by carrying a firearm in violation of the Sevier County bail order). The Court is especially concerned with the safety of these victims, and finds weighty evidence suggesting the safety of others cannot be assured if Defendant is released. *Cf. U.S. v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990) ("A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others").

    iii.    History and Characteristics

Next, the Court must take into account the "history and characteristics" of Defendant. *Id.* § 3142(g)(3). Factors considered include Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *Id.* § 3142(g)(3)(A). The Court should also note whether, at the time of the current offense or arrest, the person was on pre-trial or post-conviction release for any other federal, state, or local offense. *Id.* § 3142(g)(3)(B).

---

[6] The protective order discloses that the victim has lived with Defendant, and that they were in a relationship at some point, although it does not specify whether the relationship has ended [D. 39-2, p. 2].

13

Defendant has been unemployed for three years, has no monthly income, and his Pretrial Services Report indicates a long history of criminal conduct back to 2001, spanning most of his adult life [*See generally* PSR]. In particular, Defendant has a long history of violence against women and people close to him [*See id.*, p. 2 (Defendant pled guilty to assault where victim had order of protection against Defendant); p. 3 (Defendant's mother swore to affidavit asserting that Defendant became "enraged when she refused to give him any money, and that Defendant has harmed her in the past"); p. 4 (Defendant pled guilty to assaulting family friend)]. Nor is there evidence in the record regarding social ties or good standing in the community.

Twelve separate warrants or attachments have been served on Defendant in the past for failure to appear, and eight have been served for failure to obey a court order [PSR, p. 7]. Defendant was also subject to pre-trial conditions of release when he committed this offense. His overall history and characteristics give the Court little assurance that any set of conditions will assure the safety of other people and the community, or that Defendant will even appear in court.

    iv.    <u>The nature and seriousness of the danger to any person or the community posed by the person's release</u>

Finally, the Court must consider the "nature and seriousness of the danger to any person or the community that would be posed" by Defendant's release. 18 U.S.C. § 3142(g)(4).

Defendant's pattern of assault presents a serious danger. The history is extensive, and his conduct is not isolated: At age 22, Defendant was convicted of assaulting a woman who had an order of protection against him; now, at age 37, he is the subject of two active protection orders and is facing assault charges in state court. Unfortunately, federal law is not well-adapted to protect

victims of domestic violence during the pretrial stage. *See* Suraji R. Wagaje, *When the Consequences Are Life and Death: Pretrial Detention for Domestic Violence Offenders*, 7 DREXEL L. REV. 195, 210-15 (2014) (discussing history of federal pretrial detention statutes).

A Court's decision over whether to detain a defendant prior to trial is crucial in protecting victims of domestic violence. Research shows victims can be most vulnerable during the period right after separation from one's abuser. *Id.* at 219-20 ("[A]t the moment of separation or attempted separation—for many women, the first encounter with the authority of the law—the *batterer's quest for control* often becomes most acutely violent and potentially lethal") (quoting Martha R. Mahoney, *Legal Images of Battered Women: Redefining the Issue of Separation*, 90 MICH. L. REV. 1, 5-6 (1991)) (emphasis in original). Protection orders alone are often ineffective—almost half are violated within six months. *Id.* at 221 (citing Mindy B. Mechanic et al., *Intimate Partner Violence and Stalking Behavior: Exploration of Patterns and Correlates in a Sample of Acutely Battered Women*, 15 VIOLENCE & VICTIMS 55, 67 (2000)).

Defendant argues that concerns about the danger posed by Defendant are "unfounded," because he will be confined to his mother's home and "won't have the opportunity to prowl around and be a risk to anyone's safety" [D. 33, p. 6]. He also contends his agreement to wear an electronic ankle monitor, if released, will assure the safety of others [*Id.*, p. 4].

This hardly reassures the Court. As mentioned, Defendant has been charged in the past with assault against his mother [PSR, p. 3]. Defendant was living with his mother prior to being detained for the instant offense, yet she was unaware he had missed a March 2018 court date in Blount County [*see* D. 39, p. 3; PSR, p. 6]. Thus, the Court is not sure whether Defendant's mother will assure his appearance in court, and it is concerned for his mother's safety.

The electronic ankle monitor is just a device. And a protective order is just a piece of paper. Both can be used to punish Defendant after a harm has occurred, but neither ensures that Defendant will not leave his mother's house to further harass these victims. If there were evidence to show his current conduct was an aberration, or that he had taken responsibility for his actions, the Court might consider imposing release with conditions. But Defendant's pattern of conduct is not reassuring, and he has provided no evidence proving he is now a changed man.

The nature and seriousness of the danger posed by Defendant is substantial. The Court has considered all four factors, and found in each case that releasing Defendant—even with conditions attached—would pose a risk to the safety of particular individuals, and the community as a whole.

## IV. CONCLUSION

The Court must consider whether there are conditions for release that will reasonably assure the appearance of defendant in court, and the safety of any other person as well as the community. 18 U.S.C. § 3142(g)(1). It has not applied a presumption against Defendant that no condition or set of conditions will assure the safety of the community and others. *See id.* § 3142(e)(2). Nevertheless, it has conducted a full review of the record and finds there is clear and convincing evidence that Defendant cannot be safely released from detention. Accordingly, Defendant's motion to amend or revoke the detention order [D. 33] is **DENIED**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**