IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:18-cr-136-PLR-DCP |
| BRADLEY PAYTON HEFNER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the district court as may be appropriate. This matter is before the Court upon Defendant Bradley Payton Hefner's Motion to Dismiss the Indictment for Failure to State an Offense [Doc. 30], filed on December 21, 2018. The Government filed a response in opposition to the motion. [Doc. 34]. An evidentiary hearing on the motion was held on January 18, 2019. Assistant United States Attorney Brent N. Jones was present representing the Government. Attorney Mark E. Brown was present representing Defendant Hefner, who was also present. At the conclusion of the hearing, the Court took the motion to dismiss and related filing under advisement. After considering the exhibits, briefs, arguments, and relevant case law, the Court finds that the Indictment is sufficient as a matter of law and recommends that Defendant's Motion to Dismiss [Doc. 30] be denied.

Also before the Court is Defendant's Motion to Dismiss the Superseding Indictment [Doc. 48], filed on March 15, 2019. The Government filed a response in opposition to the Motion to Dismiss [Doc. 51] on March 22, 2019. In addition, Defendant filed a Motion to Adopt Previous Motion to Suppress as to Superseding Indictment [Doc. 49] on March 15, 2019, to which the

Government responded [Doc. 53] stating that it did not oppose the Court adopting Defendant's Motion to Suppress as applicable to the Superseding Indictment.[1]

An evidentiary hearing on the Motion to Dismiss was held on April 2, 2019. Assistant United States Attorney LaToyia Carpenter was present representing the Government. Attorney Mark E. Brown was present representing Defendant Hefner, who was also present. At the conclusion of the hearing, the Court took the motion to dismiss and related filing under advisement. After considering the exhibits, briefs, arguments, and relevant case law, the Court also recommends that Defendant's second Motion to Dismiss [Doc. 48] be denied.

## I.    FACTUAL BACKGROUND

In September 2008, the South Dakota Minnehaha County Grand Jury returned an Indictment charging Defendant with the crimes of Count I Burglary in the Second Degree, Count II Commit or Attempt to Commit Felony with Firearm, Count III Robbery First Degree, Count IV Possession of Two Ounces or Less Marijuana, and Count V Eluding. [Doc. 30-1]. Defendant pleaded guilty to "Count I Burglary in the 2nd Degree (SDLC 22-32-3)" and was sentenced to a term of eight years suspended on compliance with certain conditions. [Doc. 30-2]. In November 2008, Defendant's suspended sentence was revoked, and he was committed to South Dakota State Penitentiary, located in Sioux Falls, to serve the remaining time. [Doc. 30-3]. On June 7, 2016, Defendant was discharged from the South Dakota Department of Corrections. The Certificate of Discharge provides as follows:

> …[Defendant] was discharged from the South Dakota Department of Corrections and is hereby restored to the full rights of citizenship subject to the provisions of SDCL 22-14-15 and SDCL 22-14-15.1.

[Doc. 30-4]. The Certificate of Discharge further contains the following language:

---

[1] Defendant also filed a Motion to Compel Government to Return Telephones to Defendant [Doc. 50], which the Court will address in a separate order.

> WARNING:  Federal law governs ownership or possession of a firearm by persons convicted of a felony under state law.  In most cases, it is a federal crime for persons convicted of a felony under state law to own or possess a firearm.  Before purchasing or possessing a firearm, you should seek the advice of an attorney or contact the Bureau of Alcohol, Tobacco, Firearms & Explosive, 325 South 1st Avenue, Suite 201, SIOUX FALLS SD 57104, (605) 782-8200, to determine whether you may lawfully own or possess a firearm.

[*Id.*].

Defendant was then indicted in the Circuit Court for Sevier County, Tennessee on February 27, 2017 for aggravated domestic assault and unlawful possession of a weapon, as a result of an incident that occurred on November 21, 2016.  [Doc. 51-1].  On November 23, 2016, an Order Granting Bail for Domestic Abuse was issued by the Sevier County General Sessions Court, which prohibited Defendant "from using or possessing a firearm."  [Doc. 51-2].  Then, on July 8, 2018, Defendant was arrested by the Sevier County Sheriff's Office for being in possession of a firearm. *See* [Doc. 51].

Defendant was indicted [Doc. 3] on August 21, 2018, with a single count of violating 18 U.S.C. § 922(g)(1) by being a previously convicted felon in possession of a firearm ("Initial Indictment").  On December 19, 2018, a detention hearing was held, and Defendant's mother testified on his behalf.  [Doc. 28].  However, on December 21, 2018, Defendant was ordered to be detained pending his trial.  [Doc. 31].  Defendant filed his first Motion to Dismiss the Indictment for a Failure to State an Offense [Doc. 30] on December 21, 2018.  Subsequently, Defendant filed a Motion to Suppress [Doc. 32] on January 2, 2019.[2]  Defendant then filed a Motion for Amendment or Revocation of the Detention Order [Doc. 33] on January 4, 2019, which the District Court denied on February 13, 2019 [Doc. 40].  On February 20, 2019, the Government filed a Superseding Indictment [Doc. 41], adding a second count charging Defendant with being under

---

[2] The Motion to Suppress was ultimately denied by the District Court on April 26, 2019 [Doc. 58].

felony indictment for aggravated assault while in possession of a firearm ("Superseding Indictment"). Count One of the Superseding Indictment is the same charge as the sole count in the original Indictment.[3]

## II. POSITION OF THE PARTIES

Defendant asks the Court to dismiss Count One of the Superseding Indictment [Doc. 30], arguing that he is not a felon within the meaning of the statute, because he does not qualify as a "person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" as his "full" rights of citizenship had been restored under South Dakota law prior the date of the offense charged in Count One. [*Id.* at 3]. Defendant contends that the State of South Dakota fully restored his civil rights upon completion of his sentence for his prior state offense, and therefore the Government lacks the "crime punishable by imprisonment for one year" element required for the 18 U.S.C. § 922(g) charge.

The Government responds [Doc. 34] that regardless of being restored to the full rights of citizenship in South Dakota, he is still subject to the federal firearms ban because he is prohibited from obtaining a temporary permit to carry a concealed weapon under a separate South Dakota statute. The Government maintains that S.D. Codified Laws § 23-7-7.1 limits felons from obtaining a temporary permit to carry a concealed weapon under certain circumstances, and that Defendant failed to meet "at least two of the required criteria – [no] conviction of a felony and no

_____

[3] At the February 25, 2019 arraignment on the Superseding Indictment, counsel for Defendant Hefner stated that Defendant was not waiving or refiling his Motion to Dismiss with regard to the felon in possession of a firearm charge. In Defendant's Motion to Adopt Previous Motion to Suppress as to the Superseding Indictment [Doc. 49], Defendant seeks to adopt his previously filed Motion to Suppress [Doc. 32] so that it applies to the allegations in the Superseding Indictment. The Government responded [Doc. 53] that it did not oppose the present motion. Accordingly, the Court will apply the parties' arguments to Count One of the Superseding Indictment, and will **RECOMMEND** that Defendant's Motion to Adopt [Doc. 49] be **GRANTED**.

history of violence."[4]  [Doc. 34 at 6].  Accordingly, the Government asserts that because South Dakota law imposes a partial restriction on the possession of firearms by a convicted felon regardless of civil rights having been restored, Defendant is still considered a convicted felon for purposes of 18 U.S.C. § 922(g) and therefore prohibited under federal law from possessing all firearms.

Defendant also asks for the Court to dismiss the Superseding Indictment [Doc. 48] as a violation of his Fifth Amendment right to due process.  Defendant asserts that the prosecution obtained the Superseding Indictment as a result of his previous Motion to Dismiss, and that the additional charge is "based on facts [which the Government already] had in their possession."  [*Id.* at 3].  Defendant claims that the Government had a stake in the exercise of his protected right to file the motion to dismiss, alleging that the Government obtained the Superseding Indictment "as they were about to have their case dismissed."  [*Id.* at 4–5].

The Government responds [Doc. 51] that it was within its rights to supersede the indictment with an additional charge because of the breakdown in plea negotiations, as well as the discovery of additional information which led to the facts already in their possession gaining increased relevance.  Therefore, the Government claims that Defendant cannot demonstrate prosecutorial vindictiveness.

## III.    DEFENDANT'S FIRST MOTION TO DISMISS

Count I charges Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Section 922(g) states, in part, that,

---

[4] On January 14, 2004, Defendant pleaded guilty to misdemeanor assault of his ex-girlfriend, Siobian Marie Jones, under Tenn. Code Ann. § 39-13-101, and subsequently, on July 13, 2007, he pleaded guilty to misdemeanor assault of Roy Robert Ferrin under the same statute. [Doc. 34-1].

5

> It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Section 921, which defines the phrase "crime punishable by imprisonment for a term exceeding one year" — the general definition of a felony — provides, in part, that,

> What constitutes a conviction of [a "crime punishable by imprisonment for a term exceeding one year"] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).[5]

Defendant contends that he is not a felon for purposes of § 922(g)(1), because he does not meet the definition in § 921(a)(20) as a matter of law. Defendant argues that pursuant to *Beecham v. United States*, 511 U.S. 368 (1994), state law of the convicting jurisdiction determines whether his civil rights were restored prior to the date of the offense charged in the Indictment. In looking to South Dakota law, Defendant maintains that his civil rights were fully restored upon his release from incarceration, including the right to possess a firearm, and therefore the Government lacks the "crime punishable by imprisonment for one year" element required for the Section 922(g) charge.

The Government does not dispute that state law of the convicting jurisdiction determines the question of whether civil rights have been restored but argues that even a felon whose civil

---

[5] Defendant also refers the Court to 18 U.S.C. § 921(a)(33)(B)(ii), which relates to the definition of the term "misdemeanor crime of domestic violence." The Court finds this subsection is not relevant to the charge in Count One.

6

rights have been restored remains subject to Section 922(g)(1), if the state continues to restrict his right to firearm possession in any way. The Government maintains that despite the restoration of Defendant's civil rights, South Dakota law continues to restrict Defendant's ability to obtain a permit to carry a concealed weapon, and therefore, he is properly charged under Section 922(g)(1). *See Caron v. United States*, 524 U.S. 308, 316–17 (1998) (holding that if state imposes a partial restriction on the possession of one or more types of firearms by a convicted felon after civil rights have been restored, then the individual is still considered a convicted felon for purposes of Section 922(g)(1)).

As an initial matter, the parties agree that the Court must first look to South Dakota law to determine whether Defendant's rights have been restored. *Caron v. United* States, 524 U.S. 308, 313 (1998) (observing that pursuant to the first sentence and first clause of the second sentence of § 921(a)(20), the restoration of civil rights is defined by state law). Section 921(a)(20) expressly provides that "[w]hat constitutes a conviction of ['a crime punishable by imprisonment for a term exceeding one year'] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." Here, Defendant was convicted in South Dakota for Second Degree Burglary, a Class 3 felony, under S.D. Codified Laws § 22-32-3 in 2008 and completed his term of imprisonment in 2016. The alleged violation of Section 922(g) for firearm possession occurred on July 8, 2018. As previously noted, Defendant's Certificate of Discharge provided that "[Defendant] was "discharged from the South Dakota Department of Corrections and is hereby restored to the full rights of citizenship subject to the provisions of SDCL 22-14-15 and SDCL 22-14-15.1."[6] [Doc. 30-4]. Those provisions of South Dakota law provide as follows:

---

[6] South Dakota Codified Laws § 24-5-2 provides in pertinent part that "At the time of the discharge of any inmate under the provisions of this chapter, the inmate shall receive from the secretary of corrections a certificate stating that the inmate has been restored to the full rights of a citizen."

7

No person who has been convicted in this state or elsewhere of a crime of violence or a felony pursuant to § 22-42-2, 22-42-3, 22-42-4, 22-42-7, 22-42-8, 22-42-9, 22-42-10 or 22-42-19, may possess or have control of a firearm. A violation of this section is a Class 6 felony. The provisions of this section do not apply to any person who was last discharged from prison, jail, probation, or parole more than fifteen years prior to the commission of the principal offense.

S.D. Codified Laws § 22-14-15.

No person who has been convicted of a felony under chapter 22-42 or of a felony for a crime with the same elements in another state may possess or have control of a firearm. A violation of this section is a Class 6 felony. The provisions of this section do not apply to any person who was last discharged from prison, jail, probation, or parole, for a felony under chapter 22-42 more than five years prior to the commission of the principal offense and is not subject to the restrictions in § 22-14-15.

S.D. Codified Laws § 22-14-15.1. As Defendant's conviction was under S.D. Codified Laws § 22-32-3 and not pursuant to any of the provisions of Chapter 22-42 listed in the above statutes, the restoration of Defendant's civil rights would not be subject to the firearms restrictions in § 22-14-15 or § 22-14-15.1.

The undersigned finds that the analysis does not end here, however. The *Caron* case instructs that once the restoration of civil rights has been established under state law, the court must then examine whether there is any firearm restriction placed on a defendant as a result of the state conviction triggering the "unless clause" in § 921(a)(20) and thereby activating the uniform federal ban on possessing firearms. In *Caron,* the petitioner, who had multiple prior felony convictions, was appealing his recent conviction for carrying a rifle in violation of 18 U.S.C. § 922(g)(1), the felon-in-possession provision. *Id.* at 310–11. His civil rights had been restored by operation of Massachusetts law, and state law permitted him to possess rifles and shotguns but prevented him from obtaining a license to lawfully carry a handgun outside of his residence or place of business. *Id.* at 313. The First Circuit held that Massachusetts's restrictions were

8

sufficient to trigger the "unless clause" and bar him from possessing any firearms under federal law. *Id.* at 311–12. Petitioner appealed, arguing that the federal statute only prohibited what was already prohibited by state law. *Id.* at 314. The Supreme Court affirmed concluding that the Massachusetts law permitting a convicted felon whose civil rights had been restored to possess rifles but restricting the right to carry handguns activated the "unless clause," thereby forbidding the defendant to have any guns under federal law. *Id.* at 316-317.

Thus, the issue in this case is whether South Dakota's restriction on Defendant obtaining a temporary permit to carry a concealed pistol triggers the "unless clause" and operates as a restriction on his right to "possess…firearms." 18 U.S.C. § 921(a)(20). Section 23-7-7.1 of the South Dakota Codified Laws provides, in part that,

> A temporary permit to carry a concealed pistol shall be issued within five days of application to a person if the applicant:
>
> (1) Is eighteen years of age or older;
> (2) Has never pled guilty to, nolo contendere to, or been convicted of a felony or a crime of violence;
> (3) Is not habitually in an intoxicated or drugged condition;
> (4) Has no history of violence;
> (5) Has not been found in the previous ten years to be a "danger to others" or a "danger to self" as defined in § 27A-1-1 or is not currently adjudged mentally incompetent;
> (6) Has physically resided in and is a resident of the county where the application is being made for at least thirty days immediately preceding the date of the application;
> (7) Has had no violations of chapter 23-7, 22-14, or 22-42 constituting a felony or misdemeanor in the five years preceding the date of application or is not currently charged under indictment or information for such an offense;
> (8) Is a citizen or legal resident of the United States;
> (9) Is not a fugitive from justice; and
> (10) Is not otherwise prohibited by state law, 18 U.S.C. § 922(g) as amended to October 26, 2005, or 18 U.S.C. § 922(n) as amended to October 26, 2005, from receiving, possessing or transporting a firearm, and passes a National Instant Criminal Background Check.

9

S.D. Codified Laws § 23-7-7.1. The Government argues that because Defendant does not meet at least two of the required criteria — no felony conviction and no history of violence[7] — he would not be able to obtain a permit to carry a concealed pistol. So, while Defendant may lawfully possess firearms in South Dakota, his right to possess firearms is limited, because he may not carry a concealed pistol or obtain a permit to do so. Unlike other South Dakotans who have concealed carry permits, Defendant is restricted in his possession of a pistol, in that he may not carry it while it is concealed. Under *Caron,* this restriction brings Defendant within the "unless clause" in § 921(a)(20).

This issue was also addressed in *U.S. v. Sanford*, 707 F.3d 594, 597 (6th Cir. 2012), when the Sixth Circuit held that under *Caron,* a statutory inability to obtain a concealed carry permit triggers the "unless clause." In *Sanford*, the defendant's civil rights had been restored by operation of Michigan law upon his release from incarceration; however, he was restricted from obtaining a concealed weapons permit by virtue of his prior state conviction. *Id. at 595-96.* The Court concluded that the inability of the defendant to obtain a concealed weapons permit severely hindered his ability to transport a handgun, which was sufficient to trigger the "unless clause." *Id.* at 596.

The defendant's restriction in *Sanford* is similar to Defendant's restriction under South Dakota law to obtain a temporary permit to carry a concealed pistol. Because Defendant does not have the same freedom to transport a pistol as a South Dakota citizen without a felony conviction and history of violence, under the "all or nothing" approach adopted in *Caron*, this restriction is sufficient to trigger the "unless clause." *See Caron, 524 U.S.* at 314. Therefore, this restriction causes Defendant to fall within the statutory definition of a previously convicted felon under

---

[7] Defendant previously pleaded guilty to two misdemeanor assault charges. *See supra* note 3.

federal law. Accordingly, the Court recommends that Defendant's Motion to Dismiss Count One of the Superseding Indictment [Doc. 32] be denied.

## IV. DEFENDANT'S SECOND MOTION TO DISMISS

Defendant asks [Doc. 48] the Court to dismiss the Superseding Indictment, claiming that the Government added the second count charging him with possessing a firearm while being under felony indictment for aggravated assault in response to his Motion to Dismiss the Initial Indictment [Doc. 30]. Accordingly, Defendant claims that the Government violated his Fifth Amendment right to due process.

The Government responds [Doc. 51] that the Superseding Indictment was not vindictive, as the additional charge was added on an alternative theory after the breakdown of plea negotiations and the discovery of additional information throughout the proceedings led to increased relevance for facts which the Government already possessed.

A prosecutor retains "broad discretion" in deciding what charges to bring; however, this discretion "is not unfettered." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2013) (internal quotation marks omitted). Ultimately, "due process protects against prosecutorial retaliation for a defendant's exercise of a statutory or constitutional right." *United States v. Granderson*, 651 F. App'x 373, 377 (6th Cir. 2016) (citing *United States v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008)).

A defendant may establish prosecutorial vindictiveness in one of two ways. First, a defendant may demonstrate "actual vindictiveness, that is, objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (internal quotation marks and citations omitted). However, this is an "exceedingly difficult" showing to make. *Bragan*, 249 F.3d at 481 (internal citation omitted).

In the alternative, "the Court can find a presumption of vindictiveness by applying the 'realistic likelihood of vindictiveness,' standard which focuses on the prosecutor's 'stake' in

11

deterring the exercise of a protected right and the unreasonableness of his actions." *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (quoting *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)). In order to prove such a vindictive prosecution claim, the Sixth Circuit has required a claimant to demonstrate four elements: "(1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). If the defendant makes this showing, then the Court may presume an improper vindictive motive. *Brogan*, 249 F.3d at 481. The Government bears the burden of rebutting the presumption with "objective, on-the-record explanations" such as "governmental discovery of previously unknown evidence" or "previous legal impossibility." *Id.*

In this case, Defendant has not suggested a basis for a finding of actual vindictiveness. Therefore, he must establish the elements set forth above to show a "realistic likelihood of vindictiveness." *Dupree*, 323 F.3d at 489.

First, the Government concedes that the first element of a vindictive prosecution claim under *Suarez* is met, as Defendant exercised a protected right through his first motion to dismiss the indictment. *See, e.g.*, *United States v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008) ("Defendant argues that she was punished for exercising her right to challenge the sufficiency of the indictment against her through a motion to dismiss. Certainly, raising such a challenge to an indictment is a protected right.").

However, the Government claims that it had no prosecutorial "stake" in Defendant's motion challenging the sufficiency of the Initial indictment. [Doc. 51 at 9]. Defendant asserts that the Government had a stake in the prosecution because of the pending motion to dismiss the indictment, which he claims would have resulted in the Government's case being dismissed.

12

Further, Defendant claims that the Government was pressured by the Sevier County Sheriff's Department to ensure he remained in custody.

Defendant's motion to dismiss the Initial Indictment was during the pretrial phase, and as such, was "not particularly exceptional," as "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor." *Suarez*, 263 F.3d at 479–80 (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)). Therefore, "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.* at 480. In *Goodwin*, the Supreme Court detailed the type of "routine[ ]" and minimally burdensome filings that it thought unlikely to prompt a vindictive prosecutorial response, including motions "to challenge the sufficiency and form of an indictment." 457 U.S. at 381; *see, e.g.*, *United States v. Rosse*, 716 F. App'x 453, 462–63 (6th Cir. 2017) (finding the prosecutor had no "stake" in the outcome where defendant's "motions were merely garden-variety pretrial motions of the kind found not to burden the prosecution in *Suarez*, 263 F.3d at 479–80, which involved motions to dismiss the indictment and suppress the evidence").

However, "[a]lthough *Goodwin* generally counsels against a finding that a sufficient prosecutorial stake has arisen in the pretrial context, it has certainly not eliminated the possibility that a district court might conclude exactly that." *United States v. LaDeau*, 734 F.3d 561, 567 (6th Cir. 2013); *see Rosse*, 716 F. App'x at 462 ("Invoking a presumption of vindictiveness in a pretrial setting though possible, *see United States v. Andrews*, 633 F.2d 449, 453–56 (6th Cir. 1980) (en banc), is necessarily difficult.").

In *United States v. LaDeau*, the defendant was originally indicted on a single count of possessing child pornography, with a possible sentence of zero to ten years imprisonment. 734 F.3d at 564. After the defendant's successful motion to suppress evidence related to the possession charge, the Government subsequently obtained a superseding indictment charging the defendant

13

with conspiracy to receive child pornography, a charge which carried a greater sentencing range of five to twenty years imprisonment. *Id.* The Sixth Circuit affirmed the district court's ruling that there was "a significant prosecutorial stake in deterring [the defendant's] exercise of his suppression rights." *Id.* at 567. First, the Sixth Circuit noted that "there is little reason to suspect that the prosecutor's view of LaDeau's case changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the superseding indictment well before procuring the first indictment," and the "only substantive occurrence between the two indictments was LaDeau's successful suppression motion." *Id.* at 568. Additionally, the Sixth Circuit found that the burden of the successful suppression motion was significant because the defendant had "succeeded in suppressing crucial evidence and thereby eviscerated the government's possession case." *Id.* at 569.

Similar to *LaDeau*, Defendant claims that the Government was in possession of all relevant information leading to the new charge in the Superseding Indictment at the time it brought the charge in the Initial Indictment. Defendant claims that the Government was aware of his indictment for domestic aggravated assault on February 27, 2017 in Sevier County, as it was provided during discovery and listed on the Pretrial Services Report. Additionally, Defendant maintains that the Government was aware that he was arrested by the Sevier County Police Department on July 8, 2018, for being in possession of a firearm. Ultimately, Defendant alleges that the Government did not obtain the Superseding Indictment, including the additional charge for receiving a firearm while under felony indictment, until it believed that its case would be dismissed following his first motion to dismiss the Initial Indictment.

Ultimately, the present case has several key differences from the Sixth Circuit's holding in *LaDeau*. The Sixth Circuit has cautioned that "'[e]ach situation will necessarily turn on its own facts.'" *LaDeau*, 734 F.3d at 567 (quoting *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir.

14

1980) (en banc)).  First, Defendant had not succeeded on his motion to dismiss the Initial Indictment, as the Court had yet to rule on the pending motion at the time of the Superseding Indictment.[8]  Although Defendant believed that he was likely to succeed on the first motion to dismiss, he has not demonstrated the "mortal blow" which "eliminated [the Government's] ability to prosecute the charge alleged in the first indictment."  *Id.* at 569.  Therefore, the burden that Defendant's Motion to Dismiss the Initial Indictment placed upon the Government was not significant.  *See, e.g.*, *United States v. Matish*, No. 3:16-cr-16, 2016 WL 3143829, at *3 (E.D. Va. June 2, 2016) ("Nor does the Government's behavior here concern the same issues present in *LaDeau*, 734 F.3d at 564, because the Court had not yet ruled on Defendant's pending motions when the Government sought to supersede the indictment."); *United States v. McQuiddy*, Nos. 3:09–cr–00240–3, 3:09–cr–00240–11, 3:09–cr–00240–16, 3:09–cr–00240–17, 3:09–cr–00240– 23, 2013 WL 317965, at *7 (M.D. Tenn. Jan. 28, 2013) ("At the time the Government filed the Ninth Superseding Indictment, the Court had not yet ruled on Defendants' Speedy Trial Motions. Therefore, the only 'right' in which the Government could have had a stake, was Defendants' right to *file* the Speedy Trial Motions.").  Further, the Government has alleged that it pursued the new charge because of additional information gained during the pretrial phase which brought new significance to the facts already in their possession.  Accordingly, the Court finds that the Government did not have a significant prosecutorial stake in Defendant "merely filing" the motion to dismiss the Initial Indictment.  *See id.* at *6.

The Court must also examine the reasonableness of the prosecutor's conduct in filing the Superseding Indictment.  *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001).  However, a superseding indictment "bringing additional charges is not sufficient to be presumptively

---

[8] The Court notes that it ultimately recommended that Defendant's Motion to Dismiss [Doc. 30] be denied.  *See supra* Section III.

unreasonable." *Id.* at 480 (internal citations omitted). "Generally, a potentially vindictive superseding indictment must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment." *Id.* (internal citations omitted) (noting that superseding indictment was not vindictive where it "was based to some extent on evidence unavailable at the time of the first indictment."). The Sixth Circuit has stated that "[a] prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one." *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (en banc). "In the first situation, a prosecutor might well have made an honest mistake," but "in the second situation, the prosecutor will have already exercised his discretion, and the probability that the prosecutor acted vindictively is higher." *Id.*

In the present case, the Government alleges that it pursued a new charge on an alternative theory because after the breakdown of plea negotiations, new facts became available which placed "broader significance" on Defendant's violation of being in receipt of a firearm while under felony indictment. [Doc. 51 at 6]. In this regard, the Government details Defendant's mother's testimony during the December 19, 2018 detention hearing that she owned the car which Defendant was driving on the date of his July 8, 2018 arrest, and that the firearm was in the car because she intended to sell it. Next, the Government points to the jail call from August 4, 2018, which was provided to Defendant on December 21, 2018, in which Defendant's mother said "they tore your car all to hell," as well as that law enforcement had asked her if she had seen [Defendant] with a weapon, to which Defendant responded "do you have mine that is in there in the kitchen?" [*Id.* at 3–4]. Therefore, while the Government possessed the recorded jail call prior to the original indictment, it claims that the relevance of this call was not apparent until Defendant's mother was allegedly untruthful during the detention hearing. Lastly, while preparing a response to

16

Defendant's motion for a revocation of the detention order, in which Defendant stated that the aggravated assault charge had been dismissed, a review of requested state court records revealed that the indictment was still pending. *See* [Doc. 33 at 3].

"The Supreme Court has cautioned against 'adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting,' and has noted specifically that 'in the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has broader significance.'" *United States v. McQuiddy*, 2013 WL 317965, at *7 (M.D. Tenn. Jan. 28, 2013) (citing *United States v. Goodwin*, 457 U.S. 368, 381 (1982)).

On one hand, the Court notes that the Superseding Indictment added an additional charge potentially "based on the same conduct charged less heavily in the first indictment." *Suarez*, 263 F.3d at 480 (internal citation omitted). Both charges stem from Defendant's arrest by the Sevier County Police Department on July 8, 2018 and possession of a firearm. Similarly, in *LaDeau*, the Sixth Circuit addressed the Government's contention that the superseding indictment contained an alternative charge, stating that "[t]he charge in the superseding indictment was based on the same conduct underlying the charge in the initial indictment, the prosecution obtained no evidence supporting the superseding indictment that it did not already possess prior to obtaining the initial indictment, and the conspiracy-to-receive count that was charged in the superseding indictment carries longer mandatory minimums and maximums than the possession count that was initially charged." *United States v. LaDeau*, 734 F.3d 561, 570 (6th Cir. 2013).

However, the Government has detailed several differentiating factors which it claims resulted in viewing the relevant evidence in a new light, and thus established probable cause that Defendant was in violation of 18 U.S.C. § 922(n). *See Goodwin*, 457 U.S. at 381 ("In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a

17

basis for further prosecution or he simply may *come to realize that information possessed by the State has a broader significance*.") (emphasis added). The Government submits that Defendant's mother's testimony at the detention hearing about her ownership of the car and firearm at issue from the July 8 arrest led to the increased relevance of the August 4 jail phone call in which Defendant and his mother discussed the search of Defendant's car and allegedly discussed his ownership of a gun. Additionally, the potentially uncertain or ambiguous status of Defendant's pending felony indictment for aggravated domestic assault was made clear after the Government's request of records in response to Defendant's motion for a revocation of his detention order—in which he stated that the charge was dismissed.

Accordingly, the Court finds that the Government's conduct in filing the Superseding Indictment was not unreasonable, as information obtained during the pretrial phase resulted in the Government realizing the "broader significance" of facts already in their possession. *Id.*; *see, e.g.*, *United States v. Branham*, 97 F.3d 835, 850 (6th Cir. 1996) (finding a superseding indictment adding an additional charge after the district court denied the defendant's motion to dismiss the initial indictment in the pre-trial stage of the prosecution "was well-within the parameters set forth in *Goodwin*"); *United States v. McDaniel*, No. 1:05-CR-171, 2006 WL 839095, at *8 (W.D. Mich. Mar. 28, 2006) ("Similarly, here, the prosecutor's decision to add two counts in a superseding indictment after Defendant filed a motion to dismiss the original indictment was well within the parameters set forth in *Goodwin*. As the Court explained, 'at this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.'") (quoting *Goodwin*, 457 U.S. at 381).

Although Defendant challenges the Government's offered reasons, claiming that the Government possessed all the relevant facts before the Initial Indictment and that the jail call refers to an unrelated August 2, 2018 arrest in Sevier County, the Court finds that the Government

18

appropriately detailed how it came to view the information in a new light. *See United States v. Roach*, 502 F.3d 425, 445 (6th Cir. 2007) ("To be sure, the government's assertion that it sought a superseding indictment based on a 'reasoned re-evaluation of the evidence' after the district court declared a mistrial is rather conclusory. But this lack of elaboration does not by itself establish that the superseding indictment was motivated by prosecutorial vindictiveness."). Additionally, the new charge was "approved by a grand jury and therefore 'presumed to have rested on probable cause.'" *Id.* (quoting *United States v. Suarez*, 263 F.3d 468, 481 (6th Cir. 2001)). "As in *Roach,* the Defendant here does not allege that the Grand Jury was manipulated or otherwise prejudiced against him." *United States v. Padilla,* No. 3:10–00258, 2012 WL 3644742, at *3 (M.D. Tenn. Aug. 23, 2012).

Further, unlike in *LaDeau*, the additional charge of possessing a firearm while being under felony indictment under 18 U.S.C. § 922(n) in the Superseding Indictment carries a lesser statutory maximum punishment the original charge.[9] *See Roach*, 502 F.3d at 445 (finding additional charge in superseding indictment was not unreasonable, as "[t]he new charge, for one thing, was a less severe charge than those contained in the original indictment"); *cf. United States v. LaDeau*, 734 F.3d 561, 570 (6th Cir. 2013) (noting "the conspiracy-to-receive count that was charged in the superseding indictment carries longer mandatory minimums and maximums than the possession count that was initially charged"). The Government also submits that if Defendant was found guilty for both charges that the sentences would likely run concurrently. *See, e.g.*, *United States*

---

[9] During the April 2 hearing, the Government argued that the additional charge in the Superseding Indictment was not unreasonable, claiming that both charges in the Superseding Indictment carried the same statutory maximum punishment of ten years. However, "[w]ithout the enhanced penalties of the ACCA, a § 922(g)(1) conviction carries a maximum penalty of 10 years." *Cradler v. United States*, 891 F.3d 659, 667 (6th Cir. 2018) (citing 18 U.S.C. § 924(a)(2)). Conversely, the statutory maximum for a conviction under 18 U.S.C. § 922(n) is five years imprisonment. 18 U.S.C. § 924(a)(1)(D); *see, e.g.*, *United States v. Jackson*, No. 18-3580, 2019 WL 1178749, at *1 (6th Cir. Mar. 13, 2019).

*v. Joash*, No. 1:17-cr-145, 2018 WL 4300843, at *3 (S.D. Ohio Sept. 10, 2018) (finding the defendant had not shown that the Government's actions were unreasonable in adding an additional charge, as "[a]ccording to the Government, the additional count will have no practical effect on the outcome of the sentencing guidelines calculation"). Lastly, the Government claims that the additional charge was partially brought as a result of a breakdown in plea negotiations with Defendant's previous attorneys. *See United States v. Gravley*, 587 F. App'x 899, 918–19 (6th Cir. 2014) (stating that "so long as the Government engages a defendant in 'the give-and-take' compromise though which he can negotiate a benefit, it does not violate the defendant's constitutional rights" by bring additional charges after plea negotiations fail). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Ultimately, the Court finds that the prosecution did not possess a stake in Defendant's filing of the motion to dismiss the Indictment. Moreover, the Government's conduct in bringing the additional charge was not unreasonable because of information gained during the pre-trial phase which led to increased relevance for facts already in their possession. The prosecution did not possess "the intent to punish the defendant for exercise of the protected right." *Suarez, 263 F.3d* at 479. Accordingly, the Court finds that while Defendant did exercise his procedural right by filing the motion to dismiss the indictment, his routine, pre-trial motion did not impose enough of a burden to constitute a "realistic likelihood of vindictiveness." *Suarez*, 263 F.3d at 480 (internal citation omitted). Consequently, the Court recommends that Defendant's Motion to Dismiss the Superseding Indictment [Doc. 48] be denied.

20

## V. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS**[10] that Defendant's first Motion to Dismiss [**Doc. 30**], as well as Defendant's Motion to Dismiss the Superseding Indictment [**Doc. 48**] be **DENIED**, and that Defendant's Motion to Adopt [**Doc. 49**] be **GRANTED**.

ENTER:

Debra C. Poplin
United States Magistrate Judge

---

[10] Any objections to this report and recommendation must be served and filed within fourteen days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).