UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No.: 3:18-CR-136 |
| | ) | REEVES/POPLIN |
| BRADLEY PAYTON HEFNER | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM and ORDER**

Defendant, Bradley Hefner, objects to Magistrate Judge Poplin's Report and Recommendation [D. 59], which recommends that Mr. Hefner's motions to dismiss the Indictment [D. 30] and the Superseding Indictment [D. 48] be denied. For the following reasons, Mr. Hefner's objections [D. 61] is overruled, the Report and Recommendation is accepted in whole, and the motions to dismiss the Indictment and Superseding Indictment are both denied.

**I. BACKGROUND**

Mr. Hefner was indicted on August 21, 2018, for one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) [D. 3]. On December 21, 2018, Mr. Hefner filed a motion to dismiss the Indictment for failure to state an offense [D. 30]. Judge Poplin held a hearing regarding this motion (and a separate motion to suppress[1]) on January 18, 2019 [D. 37].

A superseding indictment was later filed on February 20, 2019, again charging Mr. Hefner on one count under § 922(g)(1), and on another count, for willfully receiving a firearm while under indictment for a felony, in violation of 18 U.S.C. § 922(n) [D. 41]. (Both charges relate to the same firearm.) After the Superseding Indictment was filed, Mr. Hefner filed another motion to dismiss

---
[1] The motion to suppress has been denied [D. 58].

that indictment, arguing the Government's decision to bring an additional charge was vindictive, in violation of his Fifth Amendment right to due process [D. 48].

Judge Poplin filed a Report and Recommendation, recommending that both motions to dismiss the indictment be denied [D. 59]. Mr. Hefner raised his objection in a timely manner, and the issue is now ripe for decision. Both motions are addressed in this Order; the standard of review for each is de novo. 28 U.S.C. § 636(b)(1)(B); FED. R. CRIM. P. 59(b)(2).

## II. MOTION TO DISMISS: FAILURE TO STATE OFFENSE

The original Indictment charged Mr. Hefner on one count, for knowingly possessing a firearm, in interstate commerce, "having previously been convicted in a court of a crime punishable by a term of imprisonment exceeding one year" [D. 3].[2] He admits a prior conviction, but argues that he cannot be charged under Count One, because he had his rights restored after serving his sentence for the prior conviction.

### a. Relevant Facts

Mr. Hefner[3] pled guilty in Minnehaha County, South Dakota on November 24, 2008, to one count of second degree burglary [D. 30-2]. He was sentenced to eight years in prison, but the sentence was suspended, provided that he comply with certain conditions [*Id.*]. Approximately one year later, he violated those conditions; the court revoked his suspended sentence, and Mr. Hefner went to prison [D. 30-3]. He completed his sentence, and was released on June 7, 2016 [D. 30-4]. Upon discharge, he was "restored to the full rights of citizenship subject to the provisions of SDCL [S.D. CODIFIED LAWS] 22-14-15 and SDCL 22-14-15.1" [*Id.*].

---

[2] The Superseding Indictment [D. 41], brings this same charge.
[3] Mr. Hefner previously went by the name "Bradley Payton Sayne," and that is how he appears in all the relevant South Dakota documents. The Court and the parties understand that Mr. Sayne and Mr. Hefner are the same person, so for ease of reading, the Court will refer to him as Mr. Hefner throughout.

Mr. Hefner eventually came to Tennessee. On July 8, 2018, an officer with the Sevier County Sheriff's Department recovered a loaded Taurus 9 millimeter pistol from Mr. Hefner's vehicle. At the scene, the officer ran a felony check, which revealed the prior South Dakota conviction [*see* D. 58, pp. 3-4]. As a result, he was indicted on August 21, 2018, on one count for violating 18 U.S.C. § 922(g)(1) [D. 3].

### b. Applicable Law

Mr. Hefner challenges the sufficiency of this indictment. Section 922(g)(1) makes it unlawful for any person, "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," to ship, transport, possess, or receive a firearm. A "crime punishable by imprisonment for a term exceeding one year" does not include a conviction which has been expunged, set aside, pardoned, or for which the person has had their civil rights restored, *unless* the pardon, expungement, or restoration "expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). This final provision is known as the "unless clause." Mr. Hefner's argument is simple: Count One should be dismissed because he had his rights restored, and since his Certificate of Discharge does not "expressly provide" that he may not possess[4] a firearm, his restoration is not excepted by the unless clause.

#### i. Case Law

The Sixth Circuit first interpreted this clause in *U.S. v. Cassidy*, 899 F.2d 543 (1990). The defendant had been convicted in Ohio for trafficking marijuana, a crime punishable by a prison term greater than one year. *Id.* at 544. When he was released from prison, the defendant received a "Restoration to Civil Rights" certificate, which restored "the rights and privileges forfeited by

---

[4] The statute applies to anyone who ships, transports, possesses, or receives a firearm. But the Indictment only alleges that Mr. Hefner possessed the firearm [D. 3; D. 41].

3

his conviction; namely the right to serve on juries and to hold office of honor, trust, or profit." *Id.* The Government later charged him in federal court under § 922(g)(1), with the prior marijuana conviction serving as the predicate felony. Since the defendant's Restoration Certificate was silent concerning firearms, the district court found there was no express limitation on the defendant's firearm privileges as defined by § 921(a)(20). *Id.* at 545 n. 5. Accordingly, it held the § 922(g)(1) charge should be dismissed. *Id.*

To reach this conclusion, the district court rejected the argument that an independent Ohio statute, which restricted firearm privileges for convicted felons, was an "express limitation" within the meaning of § 921(a)(20). *Id.* The Sixth Circuit reversed, holding that the "unless clause" can be triggered even if the express restriction on firearms privileges is contained outside the statutory provision or certificate that confers the restoration of rights. *Id.* at 545 n. 5, 550, n. 15.

A few years later, the Supreme Court took up § 921(a)(20) in *Caron v. U.S.*, 524 U.S. 308 (1998). Federal agents had seized rifles and shotguns at the defendant's home, and because he had prior felonies, he was charged on four counts under § 922(g)(1). The district court initially enhanced his sentence under 18 U.S.C. § 924(e)(1), because he was at least a three-time "violent felon"—that is, he had at least three prior convictions for crimes "punishable by imprisonment for a term exceeding one year" under § 922(g)(1). *Id.* at 311.

Three of these prior convictions were in Massachusetts (there was another in California) *Id.* at 310-11. Under Massachusetts law, the defendant could not possess handguns as a convicted felon, but he could possess rifles and shotguns; the Indictment only charged him with possessing the latter. *Id.* at 311. The defendant argued the enhancement should not apply because he had his rights restored with respect to his right to possess rifles and shotguns. *Id.*

4

The district court first ruled against the defendant because it held that his rights had not been restored in Massachusetts. *Id.* After the First Circuit reversed this decision (finding his rights had in fact been restored), the district court ruled in the defendant's favor on remand, because the handgun restriction did not apply to the defendant, who had rifles and shotguns in his possession that he was permitted to possess under state law. *Id.* at 311-12. The First Circuit then reversed, and the case went to the Supreme Court. *Id.*

A six justice majority ruled in the Government's favor, adopting what it called an "all-or-nothing" interpretation of the "unless clause." Under this approach, if the State forbids *any* type of firearm, the "unless clause" is triggered, regardless of whether the defendant in a given case is prohibited from shipping, transporting, possessing, or receiving the particular firearm at issue. *Id.* at 314-15. The Court acknowledged this approach "creates incongruities," but found that adopting the defendant's position would contradict a "likely, and rational, congressional policy." *Id.* at 315.

The Sixth Circuit later applied this holding to a related federal statute in *U.S. v. Sanford*, 707 F.3d 594 (6th Cir. 2012). The defendant had two prior domestic assault convictions in Michigan, and was later discovered in possession of multiple firearms. *Id.* at 595. Because of the prior domestic assault convictions, a federal grand jury indicted the defendant under 18 U.S.C. § 922(g)(9), which makes it unlawful for anyone who has been convicted in any court of a "misdemeanor crime of domestic violence" to ship, transport, possess, or receive a firearm.

Just as § 921(a)(20) defines a "crime punishable by imprisonment for a term exceeding one year," § 921(a)(33)(B)(ii) provides that a person shall not be considered to have been convicted of a "misdemeanor crime of domestic violence" if they have had their civil rights restored from the prior conviction, *unless* the restoration of civil rights "expressly provides that the person may not ship, transport, possess, or receive firearms." The defendant in *Sanford* had his rights restored, but

5

under Michigan law, his prior domestic assault convictions made him ineligible for a concealed weapons permit. *Sanford*, 707 F.3d at 596. The Government argued the defendant's ineligibility for a permit restricted his ability to "transport" a firearm, thereby triggering the domestic violence equivalent of the "unless clause." *Id.*

The Sixth Circuit agreed with the Government, saying it was "compell[ed]" to reach this conclusion based on the holding in *Caron*. *Id.* There were two relevant distinctions between the Massachusetts law in *Caron* and the Michigan law in *Sanford*, but the court found neither distinction was material. *Id.* at 597. Ultimately, because the defendant "did not have the same freedom to transport his firearm as a Michigan citizen without a domestic assault record," his prior domestic assault convictions were considered predicate offenses for a charge under § 922(g)(9). *Id.*

Accordingly, in this case, if Mr. Hefner does not have the same freedom to "ship, transport, possess, or receive" a firearm as a South Dakota citizen without a prior felony, then his prior South Dakota conviction may serve as the predicate offense for a charge under § 922(g)(1).

### ii. South Dakota Firearms Restrictions

As mentioned above, the Certificate of Discharge provided that Mr. Hefner was "restored to the full rights of citizenship" upon his release, subject to the provisions of two South Dakota statutes, S.D. CODIFIED LAWS §§ 22-14-15 and 22-14-15.1 [D. 30-4]. The first statute makes it illegal for anyone convicted of a "crime of violence" or certain enumerated drug felonies to possess or have control of a firearm, while the second statute provides that the firearm restrictions only apply for five years in certain cases. *See id.* The Government concedes these statutes do not apply to Mr. Hefner's prior burglary conviction [D. 34, p. 2].

Elsewhere, South Dakota law provides that a permit to carry a concealed pistol shall be issued within five days of application, *if* the applicant "has never...been convicted of a felony[.]"

6

S.D. CODIFIED LAWS § 23-7-7.1(2). The applicant may appeal the denial of an application, but the statute contains no time limitation or exception that would otherwise allow a convicted felon to obtain a concealed carry permit at a later date.

### c. Application

Prior decisions have already solved most of this statutory puzzle, and this Court simply has to snap the final few pieces into place.

First, the Certificate of Discharge does indicate Mr. Hefner is restored to his full rights of citizenship, subject only to two South Dakota laws (which do not apply to him). But *Cassidy* instructs the Court to view the whole of state law, and not just the Certificate, when deciding if a defendant's rights have been restored under § 921(a)(20).

Second, because of his felony, Mr. Hefner is not eligible for a concealed carry permit under South Dakota law. Under *Caron*, the mere fact that state law prohibited him from obtaining a concealed carry permit could trigger the "unless clause," regardless of whether Mr. Hefner actually needed a concealed carry permit to at the time he (allegedly) possessed the firearm in this case. *Sanford* applies *Caron* and holds that a law prohibiting someone with a prior domestic violence conviction from obtaining a concealed carry permit will trigger the "unless clause" in an identically worded statute, § 921(a)(33)(B)(ii).

*Caron* and *Sanford* compel this Court to hold that a South Dakota law prohibiting previously convicted felons from obtaining a concealed carry permit triggers the "unless clause" of § 921(a)(20). Thus, the Government may charge Mr. Hefner for violating § 922(g)(1), because he has been convicted of a "crime punishable by imprisonment for a term exceeding one year," as that phrase is interpreted in precedential opinions. Judge Poplin's recommendation is hereby adopted on this issue, and Mr. Hefner's first motion to dismiss the indictment is denied.

### III. MOTION TO DISMISS: VINDICTIVE PROSECUTION

Six months after the original Indictment was filed, a grand jury returned a Superseding Indictment against Mr. Hefner [D. 41]. Count One of the original Indictment and the Superseding Indictment is the same. The later Indictment simply adds a new charge in Count Two, alleging that Mr. Hefner willfully received a firearm while under indictment for a felony, in violation of 18 U.S.C. § 922(n). Mr. Hefner argues the Superseding Indictment should be dismissed, because it was brought "vindictively" in response to his first motion to dismiss.

#### a. Relevant Facts

Only a few months after his release from prison in South Dakota, Mr. Hefner was indicted on November 21, 2016, by a Sevier County, Tennessee grand jury, for aggravated domestic assault and unlawful possession of a weapon [D. 51-1]. He was granted bail subject to certain conditions, including one that prohibited him from using or possessing a firearm [D. 51-2].

We now know that when the firearm was seized and the federal grand jury indicted Mr. Hefner in the summer of 2018, he was under indictment for aggravated assault in Sevier County. The Government would have known Mr. Hefner had been charged for these crimes by September 20, 2018, when it was mentioned in the Pretrial Services Report, but it would not have known if the charges were still pending, because the disposition of the case was "unknown" [PSR, p. 6].

On October 11, the Government provided Mr. Hefner with discovery materials, including an ATF firearms trace summary completed on August 28, 2018 [D. 51-5, -6]. The trace summary shows that Karen Sayne (Mr. Hefner's mother) purchased the pistol from a gun shop in Sevierville,

TN on March 1, 2018 [D. 51-5]. On December 12, Mr. Hefner filed a motion for pretrial release, and a hearing was held on this motion one week later [D. 27, 28].

At the hearing, the Government presented one witness, Matthew Smith, an ATF Task Force Officer with the Sevier County Sheriff's Department. On direct examination, the prosecution asked Mr. Smith the following:

> Q: [T]o your knowledge, Mr. Hefner is also pending a [sic] number of charges in state court; correct?
> A: Yes.
> Q: And do you—offhand, do you know what those charges are?
> A: I know that he has at least one other weapons violation charge pending in state court. I **believe** there is some domestics. That's what he was originally picked up on out of Knox County.
>
> [D. 56, p. 12 (emphasis added)].

In closing, the Government said:

> And then we have a number of offenses that are **unknown** in the Pretrial Services Report, but certainly, even in 2018 when the defendant was supposed to be in court in various—in both Sevier County and Blount County, he failed to appear.
>
> [*Id.*, p. 26 (emphasis added)].

The defense presented Mr. Hefner's mother, who was willing to serve as a third-party custodian. In direct examination, she said the following:

> Q: Now, are there any firearms in your house?
> A: No.
> Q: Are there any kind of illegal narcotics or anything—
> A: No.
> Q: --any kind of drugs in your house?
> A: No.
> Q: Okay. Now, the car that Mr. Hefner was picked up in, was that your car?
> A: Yes, it was.
> Q: Okay. And there was a firearm found in that car; correct?
> A: Yes, there was.
> Q: Okay. Was that your firearm?
> A: Yes, it was.
> Q: Okay. And when Mr. Hefner took the car, did he know that firearm was in the car?
> A: No, he did not.
> Q: Okay.
> A: It was my intent to sell it.
>
> [*Id.*, pp. 19-20].

On December 21, two days after the hearing, the Government provided supplemental discovery to Mr. Hefner's counsel, enclosing a CD containing a jail call recording from August 4, 2018, between Mr. Hefner and his mother [D. 51-7]. The phone call directly contradicted Ms. Sayne's testimony at the detention hearing, indicating that Mr. Hefner in fact owned the car and the firearm found within [*see* D. 51-8].

Also on December 21, Judge Poplin ordered Mr. Hefner detained [D. 31]. In weighing the required statutory factors for detention, Judge Poplin explained that the probation office had performed additional research after the hearing and obtained a live "Order Granting Bail for Domestic Abuse" in Sevier County. This research confirmed that the bail order arose from the charges in the two-count indictment for aggravated assault and unlawful possession of a weapon in Sevier County [D. 31-1]. And importantly for this motion, the research cleared up the ambiguity regarding whether these charges were still pending [*Id.*].

Mr. Hefner appealed the Detention Order to the District Court [D. 33]. The Court denied his appeal, leaving the Detention Order in effect [D. 40]. In his appeal, Mr. Hefner argued that his Sevier County bail order, issued after the indictment for aggravated assault [D. 51-2], was no longer active. The Court agreed with Judge Poplin and found that it was active, and that the indictment was still pending [*see* D. 40, pp. 12-13].

Seven days after this Court entered its order denying Mr. Hefner's detention appeal, the Government filed its Superseding Indictment [D. 41]. The Superseding Indictment charged two counts: the first was the same § 922(g)(1) charge, and the second charged a violation of § 922(n), alleging that Mr. Hefner willfully received a firearm that that has been shipped and transported in interstate commerce while under indictment for a crime punishable by imprisonment for a term exceeding one year (to wit, aggravated assault) [*Id.*].

Mr. Hefner argues the Superseding Indictment should be dismissed because it was brought vindictively, in retaliation for his first motion to dismiss the indictment. The Government contends it acted appropriately in bringing the later § 922(n) charge, because its case for bringing this charge only "crystallized" in the course of litigating Mr. Hefner's motion for pretrial release.

### b. Applicable Law

Prosecutors have broad discretion in deciding whom to prosecute and what charges to bring, but the Fifth Amendment's due process clause keeps them from acting with unfettered discretion. *U.S. v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013). Under this constitutional standard, a defendant may have her case dismissed if she can show the prosecution acted "vindictively." To grant a motion to dismiss for vindictive prosecution, a court must find i) the defendant exercised a protected right; ii) there was a prosecutorial "stake" in the exercise of that right; iii) the prosecutor acted unreasonably; and iv) the prosecutor intended to punish the defendant for exercising the protected right. *U.S. v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001).

A defendant may prove vindictiveness in one of two ways. One approach is to demonstrate "actual vindictiveness," where objective evidence shows the prosecutor intended to punish the defendant for exercising her legal rights. *U.S. v. Young*, 847 F.3d 328, 361 (6th Cir. 2017) (cleaned up). Objective evidence is difficult to unearth, and it is "exceedingly difficult" to make this case. *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001) (citation omitted).

In recognition of this burden, the defendant may also succeed on her claim if she can prove a "realistic likelihood of vindictiveness." *Id.* Assuming the defendant has exercised a protected right (element one), she must provide sufficient evidence showing the prosecutor had a stake in the exercise of the right (element two) and that the prosecutor's conduct was unreasonable (element three). *Id.*; *U.S. v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003). If the defendant makes it this

far, the court will adopt a presumption that the prosecutor intended to punish the defendant (element four), which the prosecutor then has the burden of disproving. *Bragan*, 249 F.3d at 482.

### c. Application

The Government concedes that Mr. Hefner has cleared step one—the exercise of a protected right—in bringing his first motion to dismiss the indictment [D. 51, p. 9]. The remaining three factors will be analyzed in order.

### i. Prosecutorial Stake

The test for finding whether there is a prosecutorial stake in the exercise of the right will vary depending on the stage of the proceedings. When the claim for prosecutorial vindictiveness arises from the prosecution's response to a pretrial motion—as it does here—courts have declined to adopt a *per se* rule to determine if the requisite "stake" has arisen. *LaDeau*, 734 F.3d at 567 (citing *U.S. v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987)).

Instead, the "stake" is evaluated by looking to the burden the pretrial motion places on the prosecution. *See U.S. v. Rosse*, 716 F. App'x 453, 462 (6th Cir. 2017). For example, if the motion would require the government to "do over what it thought it had already done correctly," or to increase its expenditures of prosecutorial resources, it would have a sufficient stake in the assertion of the right. *Id.* (citations omitted). Generally, a sufficient prosecutorial stake will not arise in the pretrial context, but "each situation will necessarily turn on its own facts." *LaDeau*, 734 F.3d at 567 (quoting *U.S. v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980)).

The Government contends the *Suarez* decision—where the Sixth Circuit found no prosecutorial stake—applies to the filing of pretrial motions "identical" to the ones in this case [D. 51, p. 9]. *See Suarez*, 263 F.3d at 479-80. This is incorrect: In *Suarez*, the superseding indictment, which formed the basis of the vindictive prosecution claim, was filed when the defendant was only

*planning* to file pretrial motions to suppress evidence and dismiss his indictment. *Id.* at 479. Here, the Superseding Indictment was filed after Mr. Hefner filed his motion to dismiss [D. 30, 41].

In *LaDeau*, another principal Sixth Circuit decision, the court found a prosecutorial stake when the superseding indictment was filed after the defendant's motion to suppress was granted. *LaDeau*, 734 F.3d at 568-69 ("[The defendant's exercise of his rights] did not inflict merely 'some' incidental burden on the government's ability to prove its case; it inflicted a mortal blow").

In *Suarez*, there was no prosecutorial stake when the motion to dismiss had not been filed. In *LaDeau*, there was a prosecutorial stake when the motion to dismiss had been decided upon. No Sixth Circuit decision provides a clear road map here, where the motion to dismiss is pending. But a case from the Ninth Circuit, *U.S. v. Garza-Juarez*, might solve this Goldilocks conundrum. 992 F.2d 896 (9th Cir. 1993); *see U.S. v Matish*, No. 4:16-CR-16, 2016 WL 3143829 at *3 (E.D. Va., June 2, 2016) ("[*Garza-Juarez*] addresses the situation in between *LaDeau* and *Suarez*").

In *Garza-Juarez*, after the initial indictment was filed, the government disclosed a report to defense counsel describing additional violations that could support indictment on three additional counts. 992 F.2d at 901. The Government then advised defense counsel that "your client and his brother will have to plead guilty very quickly or I will consider filing additional charges [based on the information in the report]." *Id.*

The defendants did not plead guilty, and instead filed motions to dismiss the indictment; in response, the Government sent letters offering a "package deal" under which it would agree not to file charges if the defendants pled guilty to the initial indictment. *Id.* at 902. But the package deal was not just a carrot, it was also a stick: the Government said would it would withdraw the deal if the defendants proceeded with their motion to dismiss the indictment. *Id.* at 905.

Thus, the defendants had three options: They could plead guilty, avoiding the superseding indictment; they could refuse to plead guilty and withdraw the motion to dismiss, which would leave the threat of a superseding indictment, but preserve the offer of a package deal; or they could refuse to plead guilty and pursue their motion to dismiss, which would take the package deal off the table. They chose option three, and proceeded with their motion to dismiss. *Id.*

The Government kept its word and withdrew the package deal. It also filed the superseding indictment, which the defendants argued amounted to vindictive prosecution. The court found that, by making an offer conditional on the defendants' agreement to forgo a protected right (the right to file a motion to dismiss the indictment), the prosecution viewed the exercise of the protected right as a burden. From this, the court found the filing of a superseding indictment was presumptively vindictive, and considered the threat to withdraw the package deal a "critical fact" that justified this decision. *Id.* at 907.

Again, the general rule is that, because the Government expects pretrial motions to be filed, the prosecution will not have a "stake" in these motions, because they are not ordinarily burdensome. In *LaDeau*, the burden manifested because the pretrial motion to suppress evidence was successful, the prosecution suffered a "mortal blow," and it could no longer use that evidence to bring new charges for the same conduct.[5] 734 F.3d at 568-69. *Garza-Juarez* is more fact-specific. The decision turned on the prosecution's withdrawal a plea offer that was conditioned on the defendants agreeing to forego their right to bring a pretrial motion. By doing this, the court had a reason to believe the prosecution viewed an otherwise ordinary pretrial motion as a burden.

---

[5] In *LaDeau*, it also mattered that the prosecution did not refile the *same* charges (because the defendant had successfully suppressed the relevant evidence for the prior charges). Generally, a successful motion that only requires the prosecution to seek a new indictment for the same conduct is not a motion in which the prosecution has a sufficient stake. *See U.S. v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008) ("[T]he fact that the government had to return for a superseding indictment does not constitute a sufficient stake in deterring Defendant's exercise of a protected right.").

Applying the reasoning of *Garza-Juarez*, Mr. Hefner would need to show some evidence that the Government viewed his motion to dismiss the indictment as exceptionally burdensome. He argues in his objection that because the second charge was brought based on the same facts in their possession when the first charge was brought, this "clearly shows" the Government was concerned with the pending motion to dismiss [D. 61, p. 12]. This argument goes to the third element of a vindictive prosecution claim—whether the Government's conduct was reasonable—and is not responsive to the question of whether the prosecution viewed his motion as a burden.

Otherwise, there is nothing to show the Government viewed Mr. Hefner's exercise of his right as somehow extraordinary. Although plea bargaining appears to have broken down, Mr. Hefner does not show the Government used his motion to dismiss as a bargaining chip, as the prosecution did in *Garza-Juarez*. And no "mortal blow" of the sort discussed in *LaDeau* has landed. Thus, there is no prosecutorial stake in Mr. Hefner's exercise of his right to file a pretrial motion.

### ii. Reasonableness

Even if there was a prosecutorial stake, Mr. Hefner would need to show the Government's conduct was unreasonable for the Court to apply a presumption of vindictiveness. Mr. Hefner argues the Government's conduct was unreasonable because by September 20, 2018—when the Pretrial Services Report was filed—the Government knew he had received the weapon (found in the car he was driving), had reason to believe he was the owner of the gun and the car (from the August 4 jail phone call), and that there was a charge for aggravated assault (from the Pretrial Services Report). With these facts in hand, he contends the Government had what it needed to bring a charge under 18 U.S.C. § 922(n).

To the contrary, the Court finds the Government conducted itself reasonably in bringing the Superseding Indictment, for three independent reasons.

15

First, the mere possession of facts at the time of the initial indictment that could support a § 922(n) charge—viewed with the benefit of hindsight—does not make the Government's decision to bring the charge later automatically unreasonable. *See U.S. v. Goodwin*, 457 U.S. 368, 382 (1982) ("[a]n initial decision should not freeze future conduct"); *U.S. v. Branham*, 97 F.3d 835, 850 (6th Cir. 1996) ("[A]t the pretrial stage of the proceedings, 'the prosecutor's assessment of the proper extent of prosecution may not have crystallized.'") (quoting *Goodwin*, 457 U.S. at 381)).

It is true that the aggravated assault charge appears on the Pretrial Services Report, but the report did not provide information on the current status of that charge. At the detention hearing in December, the Government witness said he "believe[d]" there were some domestic charges pending, and the prosecutor said there were a number of offenses that were "unknown" [D. 56, pp. 12, 26]. This equivocal language credibly shows that, even in December, the Government did not know for certain whether the aggravated assault charge was still pending in Sevier County.

Further, the evidence regarding who owned the gun was not clear at the time the initial indictment was brought. Count Two of the Superseding Indictment requires the Government to prove that Mr. Hefner *received* a firearm, but Count One only requires proof of possession [*see* D. 1].[6] "When received, a firearm is necessarily possessed," but the converse is not true. *Ball v. U.S.*, 470 U.S. 856, 862 (1985) (quoting *U.S. v. Martin*, 732 F.2d 591, 592 (7th Cir. 1984)). The ATF trace summary shows that Mr. Hefner's mother, Karen Sayne, had purchased the firearm, casting doubt on whether Mr. Hefner himself had received the firearm [D. 51-5]. At the detention hearing, the Government observed Ms. Sayne's testimony that she was the owner of the gun, which drew

---

[6] A charge can be brought under § 922(g)(1) against a felon who ships, transports, possesses, or receives a firearm, but the Government only charged Mr. Hefner with possession in the Indictment [D. 3, 41]. *See* 18 U.S.C. § 922(g). On the other hand, someone who is under indictment for a felony cannot be charged federally for *possessing* a firearm; the statute requires proof of shipment, transport, or receipt. *See id.* § 922(n).

its attention back to the August 4, 2018 phone call, where she spoke to Mr. Hefner in a manner that suggested he owned both the gun and the car [D. 51-8]

Thus, before the detention hearing, the Government had conflicting evidence: a jail phone call suggesting Mr. Hefner was the owner of the gun, and a firearm trace summary suggesting it belonged to Ms. Sayne. The Government's case only "crystallized" at the detention hearing, when it was able to judge Ms. Sayne's credibility. Especially in light of the higher burden for "receipt" of a firearm under § 922(n), compared to "possession" under § 922(g)(1), the decision to wait in bringing the former charge was not unreasonable.

Finally, the difference in the available punishment for the two charges (and whether the later charge is more punitive than the first) is a relevant consideration in determining whether the Government's conduct was reasonable. In *LaDeau*, the prosecution's later charge carried a maximum punishment of twenty years imprisonment, with a mandatory minimum of five; the prior charge carried a range of zero to ten years. 734 F.3d at 571. Here, it's the opposite: the available punishment for Count Two is a maximum of five years, while Count One carries a maximum of ten years. 18 U.S.C. § 924(a)(1)-(2).

The Government waited to bring a less punitive charge with a higher burden of proof against Mr. Hefner until it developed a firmer basis for proving an essential element of the crime charged. The Court finds the Government conducted itself appropriately in doing so, and therefore it did not act unreasonably in waiting to bring the charge under § 922(n).

### iii. Application of Presumption

Because the Court has found no prosecutorial stake in Mr. Hefner's exercise of his right to file a pretrial motion, and because the decision to bring the Superseding Indictment was not unreasonable, the Court will not presume that the Government intended to punish Mr. Hefner for

exercising his right. Therefore, Mr. Hefner has not shown a "reasonable likelihood of vindictiveness" on the part of the Government in this case.

Nor has Mr. Hefner has not provided any actual evidence that the Government intended to punish him for filing his motion. Thus, he has not made a claim for vindictive prosecution, in violation of the Fifth Amendment, and his motion to dismiss the Superseding Indictment is denied.

## IV. CONCLUSION

In conclusion, the Court finds that Mr. Hefner has been convicted of a "crime punishable by imprisonment for a term exceeding one year," and that he can therefore be charged under 18 U.S.C. § 922(g)(1). In addition, he has not shown a prosecutorial stake in his motion to dismiss, nor that the Government conducted itself unreasonably in bringing the Superseding Indictment. For these reasons, Mr. Hefner's objection [D. 61] is **OVERRULED**, and the Court **ACCEPTS IN WHOLE** the Report and Recommendation of Judge Poplin [D. 59]. Mr. Hefner's motions to dismiss the Indictment [D. 30] and the Superseding Indictment [D. 48] are hereby **DENIED**.

**IT IS SO ORDERED.**

*/s/ Pamela L. Reeves*
**CHIEF UNITED STATES DISTRICT JUDGE**